## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE EASTERN DISTRICT OF VIRGINIA
### Richmond Division

In re:  RAYMOND MARK LEE, and
       MELANIE WILSON LEE

              Debtors.

Case No. 06-33431-KRH

Chapter 13


BANK OF MCKENNEY,

              Movant,

v.

RAYMOND MARK LEE, and
MELANIE WILSON LEE,

              Debtors,

and

ROBERT E. HYMAN,

              Trustee,

              Respondents.


### MOTION FOR RELIEF FROM AUTOMATIC STAY

Bank of McKenney (the "Bank"), for its Motion for Relief from the stay of 11 U.S.C. §

362(a), alleges and states as follows:

### Jurisdiction

1.      The Debtors commenced this case by filing, on November 30, 2006, a voluntary

Neil E. McCullagh – VSB No. 39027
Cantor Arkema, P.C.
Bank of America Center
1111 East Main Street, 16th Floor
Post Office Box 561
Richmond, Virginia  23218-0561
(804) 644-1400
(804) 225-8706 - fax
*Counsel to Bank of McKenney*

petition for relief under Chapter 13 of Title 11 of the United States Code (the "Bankruptcy Code") in the United States Bankruptcy Court for the Eastern District of Virginia, Richmond Division, bearing the Case Number 06-33431-KRH.

2.     This Motion is filed pursuant to § 362(d) of the Bankruptcy Code, Bankruptcy Rules 4001(a) and 9014, and Local Bankruptcy Rule 4001(a)-1, seeking relief from the automatic stay of § 362(a) of the Bankruptcy Code.

3.     This Court has jurisdiction over this Motion for Relief from Stay pursuant to 28 U.S.C. §§ 157 and 1334.

## The Debts and the Collateral

## The First Loan Note and Collateral

4.     The Bank is the holder of a promissory note executed by the Debtors dated July 11, 2006 (the "First Loan Note"), a copy of which is attached as **Exhibit A.**

5.     The First Loan Note is secured by a Credit Line Deed of Trust on a parcel of real property in which the Debtors have an interest (the "First Loan Deed of Trust"), a copy of which is attached as **Exhibit B.** This parcel is commonly known as 415 Brown Avenue, Hopewell, Virginia 23860 and is described more particularly in the First Loan Deed of Trust (the "First Loan Property").

6.     The First Loan Note is in default. The Debtors have not made a payment on the First Loan Note since August 17, 2006, and the note is now due for the September 2006 payment. The total arrearage on the First Loan Note is $4,898.52, including a post-petition arrearage of $2,419.26, not including attorney fees and costs related to this bankruptcy case.

7. The Bank has incurred and will continue to incur attorney's fees and legal costs arising as a result of this bankruptcy filing. The Bank is entitled to add those attorney's fees and costs to its claim under the First Loan Note and Deed of Trust.

8. Upon information and belief, the Debtors have little to no equity in the First Loan Property. The payoff on the First Loan Note is $97,992.05 (not including attorney fees), and the Debtors' bankruptcy schedules state that the First Loan Property has a value of $98,000.00.

9. The First Loan Property is not necessary to an effective reorganization of the Debtors.

## The Second Loan Note and Collateral

10. The Bank is the holder of a promissory note executed by the Debtors dated April 12, 2006 (the "Second Loan Note"), a copy of which is attached as **Exhibit C**.

11. The Second Loan Note is secured by a Credit Line Deed of Trust on a parcel of real property in which the Debtors have an interest (the "Second Loan Deed of Trust"), a copy of which is attached as **Exhibit D**. This parcel is commonly known as 4249 Richwine Road, Richmond, Virginia 23234 and is described more particularly in the Second Loan Deed of Trust (the "Second Loan Property").

12. The Second Loan Note is in default. The Debtors have not made a payment on the Second Loan Note since November 16, 2006, and the note is now due for the September 2006 payment. The total arrearage on the Second Loan Note is $4,461.86, including a post-petition arrearage of $1,760.86, not including attorney fees and costs related to this bankruptcy case.

13.     The Bank has incurred and will continue to incur attorney's fees and legal costs arising as a result of this bankruptcy filing. The Bank is entitled to add those attorney's fees and costs to its claim under the Second Loan Note and Deed of Trust.

14.     Upon information and belief, the Debtors have little to no equity in the Second Loan Property. The payoff on the Second Loan Note is $118,217.76 (not including attorney fees), and the Debtors' bankruptcy schedules state that (a) the Second Loan Property has a value of $98,000.00, and (b) the Second Loan Property is also encumbered by a second deed of trust held by BB&T in the amount of $33,000.

15.     The Second Loan Property is not necessary to an effective reorganization of the Debtors.

### The Third Loan Note and Collateral

16.     The Bank is the holder of a promissory note executed by the Debtors dated February 28, 2006 (the "Third Loan Note"), a copy of which is attached as **Exhibit E.**

17.     The Third Loan Note is secured by a North Carolina Deed of Trust on a parcel of real property in which the Debtors have an interest (the "Third Loan Deed of Trust"), a copy of which is attached as **Exhibit F.** This parcel is commonly known as 1122 Churchill Avenue, Wilson, NC 27893 and is described more particularly in the Third Loan Deed of Trust (the "Third Loan Property").

18.     The Third Loan Note is in default. The Debtor has not made a payment on the Third Loan Note since August 14, 2006, and the note is now due for the September 2006 payment. The total arrearage on the Third Loan Note is $1,309.22, including a post-petition arrearage of $516.14, not including attorney fees and costs related to this bankruptcy case.

19.     The Bank has incurred and will continue to incur attorney's fees and legal costs arising as a result of this bankruptcy filing.  The Bank is entitled to add those attorney's fees and costs to its claim under the Third Loan Note and Deed of Trust.

20.     Upon information and belief, the Debtors have little to no equity in the Third Loan Property.  The payoff on the Third Loan Note is $28,584.06 (not including attorney fees), and the Debtors' bankruptcy schedules state that the Third Loan Property has a value of $49,000.00.

21.     The Third Loan Property is not necessary to an effective reorganization of the Debtors.

### The Fourth Loan Note and Collateral

22.     The Bank is the holder of a promissory note executed by the Debtors dated June 1, 2006 (the "Fourth Loan Note"), a copy of which is attached as **Exhibit G.**

23.     The Fourth Loan Note is secured by a Credit Line Deed of Trust on a parcel of real property in which the Debtors have an interest (the "Fourth Loan Deed of Trust"), a copy of which is attached as **Exhibit H.**  This parcel is commonly known as 10219 Sunnyside Road, McKenney, VA 23872 and is described more particularly in the Fourth Loan Deed of Trust (the "Fourth Loan Property").

24.     The Fourth Loan Note is in default.  The Debtor has not made a payment on the Fourth Loan Note since August 14, 2006, and the note is now due for the September 2006 payment.  The total arrearage on the Fourth Loan Note is $2,834.15, including a post-petition arrearage of $1,117.31, not including attorney fees and costs related to this bankruptcy case.

25.    The Bank has incurred and will continue to incur attorney's fees and legal costs arising as a result of this bankruptcy filing. The Bank is entitled to add those attorney's fees and costs to its claim under the Fourth Loan Note and Deed of Trust.

26.    Upon information and belief, the Debtors have little to no equity in the Fourth Loan Property. The payoff on the Fourth Loan Note is $73,763.06 (not including attorney fees), and the Debtors' bankruptcy schedules state that the Fourth Loan Property has a value of $75,000.00.

27.    The Fourth Loan Property is not necessary to an effective reorganization of the Debtors.

## Relief Requested

28.    Based upon the foregoing, "cause" exists for relief from the automatic stay of 11 U.S.C. § 362(a) so that the Bank may enforce its rights against the First Loan Property, the Second Loan Property, the Third Loan Property, and the Fourth Loan Property (together, the "Properties") under the applicable Notes and Deeds of Trust and applicable state law.

29.    The Debtors have little to no equity in any of the Properties.

30.    The Properties are not necessary to an effective reorganization of the Debtors.

31.    The Bank also requests that any order granting this Motion provide that the order will be effective against, and binding upon, any Chapter 7 trustee in the event the Debtors' case is converted to Chapter 7.

WHEREFORE, the Bank respectfully requests entry of an Order terminating the stay of § 362(a) of the Bankruptcy Code so that the Bank may enforce its rights against the Properties under the applicable Notes and Deeds of Trust and applicable state law, and granting the Bank such further relief as the Court deems appropriate.

## NOTICE

**Your rights may be affected. You should read these papers carefully and discuss them with your attorney, if you have one in this bankruptcy case. (If you do not have an attorney, you may wish to consult one).**

If you do not wish the Court to grant the relief sought in this Motion, or if you want the Court to consider your views on the Motion, then within fifteen (15) days from the date of service of this Motion, you must file a written response explaining your position with the Court at the following address: **Clerk of Court, United States Bankruptcy Court, 1100 East Main Street, Room 310, Richmond, Virginia 23219-3515,** and serve a copy on the movant's attorney at the address shown below. Unless a written response is filed and served within this 15-day period, the Court may deem opposition waived, treat the Motion as conceded, and issue an order granting the requested relief.

If you mail your response to the Court for filing, you must mail it early enough so the court will receive it on or before the expiration of the 15-day period.

Attend the preliminary hearing scheduled to be held on **February 14, 2007, at 9:30 a.m., in Courtroom 345, United States Bankruptcy Court, U.S. Courthouse Annex, 1100 East Main Street, Richmond, Virginia.**

If you or your attorney do not take these steps, the Court may decide that you do not oppose the relief sought in the Motion and may enter an Order granting that relief.

BANK OF MCKENNEY

By: /s/ Neil E. McCullagh
        Counsel

Neil E. McCullagh – VSB No. 39027
Cantor Arkema, P.C.
Bank of America Center
1111 East Main Street, 16th Floor
Post Office Box 561
Richmond, Virginia 23218-0561
(804) 644-1400
(804) 225-8706 - fax
*Counsel to Bank of McKenney*

## CERTIFICATE OF SERVICE

I hereby certify that on January 24, 2007, a true copy of the foregoing Motion for Relief from Stay was sent by first-class mail, postage prepaid, or by the Court's ECF system (as shown below), to all necessary parties, as follows:

Raymond and Melanie Lee (by mail)
14319 River Road
Chesterfield, VA 23838

Richard O. Gates, Esquire (by ECF)
P. O. Box 187
Chesterfield, VA 23832

Robert E. Hyman, Trustee
P.O. Box 1780
Richmond, VA 23218

/s/ Neil E. McCullagh

# PROMISSORY NOTE



| Principal | Loan Date | Maturity | Loan No | Call / Coll | Account | Officer | Initials |
|-----------|-----------|----------|---------|-------------|---------|---------|----------|
| $92,900.00 | 07-11-2006 | 07-11-2007 | 17336608 | CA-1-4 1ST / 20 | | SBK | |

References in the shaded area are for Lender's use only and do not limit the applicability of this document to any particular loan or item.
Any item above containing "****" has been omitted due to text length limitations.

**Borrower:** RAYMOND M. LEE (SSN: 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)
MELANIE W. LEE (SSN: 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)
14319 RIVER ROAD
CHESTERFIELD, VA 23838

**Lender:** Bank of McKenney
Main Office
20718 First Street, P.O. Box 370
McKenney, VA 23872

## IMPORTANT NOTICE

THIS INSTRUMENT CONTAINS A CONFESSION OF JUDGMENT PROVISION WHICH CONSTITUTES A WAIVER OF IMPORTANT RIGHTS YOU MAY HAVE AS A DEBTOR AND ALLOWS THE CREDITOR TO OBTAIN A JUDGMENT AGAINST YOU WITHOUT ANY FURTHER NOTICE.

**Principal Amount: $92,900.00**                                  **Date of Note: July 11, 2006**

**PROMISE TO PAY.** RAYMOND M. LEE and MELANIE W. LEE ("Borrower") jointly and severally promise to pay to Bank of McKenney ("Lender"), or order, in lawful money of the United States of America, the principal amount of Ninety-two Thousand Nine Hundred & 00/100 Dollars ($92,900.00), together with interest on the unpaid principal balance from July 11, 2006, until paid in full.

**PAYMENT.** Borrower will pay this loan in full immediately upon Lender's demand. If no demand is made, Borrower will pay this loan in accordance with the following payment schedule: 6 monthly consecutive interest payments, beginning August 11, 2006, with interest calculated on the unpaid principal balances at an interest rate of 7.500% per annum; 5 monthly consecutive principal and interest payments of $670.38 each, beginning February 11, 2007, with interest calculated on the unpaid principal balances at an interest rate of 7.500% per annum; and one principal and interest payment of $93,042.76 on July 11, 2007, with interest calculated on the unpaid principal balances at an interest rate of 7.500% per annum. This estimated final payment is based on the assumption that all payments will be made exactly as scheduled; the actual final payment will be for all principal and accrued interest not yet paid, together with any other unpaid amounts under this Note. Unless otherwise agreed or required by applicable law, payments will be applied first to any accrued unpaid interest; then to principal; then to any unpaid collection costs; and then to any late charges. The annual interest rate for this Note is computed on a 365/360 basis; that is, by applying the ratio of the annual interest rate over a year of 360 days, multiplied by the outstanding principal balance, multiplied by the actual number of days the principal balance is outstanding. Borrower will pay Lender at Lender's address shown above or at such other place as Lender may designate in writing.

**PREPAYMENT; MINIMUM INTEREST CHARGE.** Borrower agrees that all loan fees and other prepaid finance charges are earned fully as of the date of the loan and will not be subject to refund upon early payment (whether voluntary or as a result of default), except as otherwise required by law. In any event, even upon full prepayment of this Note, Borrower understands that Lender is entitled to a minimum interest charge of $25.00. Other than Borrower's obligation to pay any minimum interest charge, Borrower may pay without penalty all or a portion of the amount owed earlier than it is due. Early payments will not, unless agreed to by Lender in writing, relieve Borrower of Borrower's obligation to continue to make payments under the payment schedule. Rather, early payments will reduce the principal balance due and may result in Borrower's making fewer payments. Borrower agrees not to send Lender payments marked "paid in full", "without recourse", or similar language. If Borrower sends such a payment, Lender may accept it without losing any of Lender's rights under this Note, and Borrower will remain obligated to pay any further amount owed to Lender. All written communications concerning disputed amounts, including any check or other payment instrument that indicates that the payment constitutes "payment in full" of the amount owed or that is tendered with other conditions or limitations or as full satisfaction of a disputed amount must be mailed or delivered to: Bank of McKenney, Main Office, 20718 First Street, P.O. Box 370, McKenney, VA 23872.

**LATE CHARGE.** If a payment is 7 days or more late, Borrower will be charged 5.000% of the unpaid portion of the regularly scheduled payment.

**INTEREST AFTER DEFAULT.** Upon default, including failure to pay upon final maturity, the interest rate on this Note shall be increased to 15.000% per annum. However, in no event will the interest rate exceed the maximum interest rate limitations under applicable law.

**DEFAULT.** Each of the following shall constitute an event of default ("Event of Default") under this Note:

**Payment Default.** Borrower fails to make any payment when due under this Note.

**Other Defaults.** Borrower fails to comply with or to perform any other term, obligation, covenant or condition contained in this Note or in any of the related documents or to comply with or to perform any term, obligation, covenant or condition contained in any other agreement between Lender and Borrower.

**False Statements.** Any warranty, representation or statement made or furnished to Lender by Borrower or on Borrower's behalf under this Note or the related documents is false or misleading in any material respect, either now or at the time made or furnished or becomes false or misleading at any time thereafter.

**Death or Insolvency.** The death of Borrower or the dissolution or termination of Borrower's existence as a going business, or a trustee or receiver is appointed for Borrower or for all or a substantial portion of the assets of Borrower, or Borrower makes a general assignment for the benefit of Borrower's creditors, or Borrower files for bankruptcy, or an involuntary bankruptcy petition is filed against Borrower and such involuntary petition remains undismissed for sixty (60) days.

**Creditor or Forfeiture Proceedings.** Commencement of foreclosure or forfeiture proceedings, whether by judicial proceeding, self-help, repossession or any other method, by any creditor of Borrower or by any governmental agency against any collateral securing the loan. This includes a garnishment of any of Borrower's accounts, including deposit accounts, with Lender. However, this Event of Default shall not apply if there is a good faith dispute by Borrower as to the validity or reasonableness of the claim which is the basis of the creditor or forfeiture proceeding and if Borrower gives Lender written notice of the creditor or forfeiture proceeding and deposits with Lender monies or a surety bond for the creditor or forfeiture proceeding, in an amount determined by Lender, in its sole discretion, as being an adequate reserve or bond for the dispute.

**Events Affecting Guarantor.** Any of the preceding events occurs with respect to any guarantor, endorser, surety, or accommodation party of any of the indebtedness or any guarantor, endorser, surety, or accommodation party dies or becomes incompetent, or revokes or disputes the validity of, or liability under, any guaranty of the indebtedness evidenced by this Note. In the event of a death, Lender, at its option, may, but shall not be required to, permit the guarantor's estate to assume unconditionally the obligations arising under the guaranty in a manner satisfactory to Lender, and, in doing so, cure any Event of Default.

EXHIBIT

A

# PROMISSORY NOTE
## (Continued)

**Adverse Change.** A material adverse change occurs in Borrower's financial condition, or Lender believes the prospect of payment or performance of this Note is impaired.

**Insecurity.** Lender in good faith believes itself insecure.

**Cure Provisions.** If any default, other than a default in payment is curable and if Borrower has not been given a notice of a breach of the same provision of this Note within the preceding twelve (12) months, it may be cured if Borrower, after receiving written notice from Lender demanding cure of such default: (1) cures the default within fifteen (15) days; or (2) if the cure requires more than fifteen (15) days, immediately initiates steps which Lender deems in Lender's sole discretion to be sufficient to cure the default and thereafter continues and completes all reasonable and necessary steps sufficient to produce compliance as soon as reasonably practical.

**LENDER'S RIGHTS.** Upon default, Lender may declare the entire unpaid principal balance under this Note and all accrued unpaid interest, together with all other applicable fees, costs and charges, if any, immediately due and payable, and then Borrower will pay that amount.

**ATTORNEYS' FEES; EXPENSES.** Subject to any limits under applicable law, upon default, Borrower agrees to pay Lender's attorneys' fees and all of Lender's other collection expenses, whether or not there is a lawsuit, including without limitation legal expenses for bankruptcy proceedings.

**HOMESTEAD WAIVER.** Borrower, to the extent permitted by law, hereby waives Borrower's homestead exemption with respect to all property subject to any security interest or lien granted to secure this loan.

**GOVERNING LAW.** This Note will be governed by federal law applicable to Lender and, to the extent not preempted by federal law, the laws of the Commonwealth of Virginia without regard to its conflicts of law provisions. This Note has been accepted by Lender in the Commonwealth of Virginia.

**CHOICE OF VENUE.** If there is a lawsuit, Borrower agrees upon Lender's request to submit to the jurisdiction of the applicable courts for DINWIDDIE COUNTY County, Commonwealth of Virginia.

**CONFESSION OF JUDGMENT.** Upon a default in payment of this Note at maturity, whether by acceleration or otherwise, Borrower hereby irrevocably authorizes and empowers WILLIAM D. ALLEN, III as Borrower's attorney-in-fact to appear in the DINWIDDIE COUNTY clerk's office and to confess judgment against Borrower for the unpaid amount of this Note as evidenced by an affidavit signed by an officer of Lender setting forth the amount then due, attorneys' fees plus costs of suit, and to release all errors, and waive all rights of appeal. If a copy of this Note, verified by an affidavit, shall have been filed in the proceeding, it will not be necessary to file the original as a warrant of attorney. Borrower waives the right to any stay of execution and the benefit of all exemption laws now or hereafter in effect. No single exercise of the foregoing warrant and power to confess judgment will be deemed to exhaust the power, whether or not any such exercise shall be held by any court to be invalid, voidable, or void; but the power will continue undiminished and may be exercised from time to time as Lender may elect until all amounts owing on this Note have been paid in full.

**DISHONORED ITEM FEE.** Borrower will pay a fee to Lender of $25.00 if Borrower makes a payment on Borrower's loan and the check or preauthorized charge with which Borrower pays is later dishonored.

**RIGHT OF SETOFF.** To the extent permitted by applicable law, Lender reserves a right of setoff in all Borrower's accounts with Lender (whether checking, savings, or some other account). This includes all accounts Borrower holds jointly with someone else and all accounts Borrower may open in the future. However, this does not include any IRA or Keogh accounts, or any trust accounts for which setoff would be prohibited by law. Borrower authorizes Lender, to the extent permitted by applicable law, to charge or setoff all sums owing on the indebtedness against any and all such accounts.

**COLLATERAL.** Borrower acknowledges this Note is secured by A CREDIT LINE DEED OF TRUST DATED JULY 11, 2006.

**SUCCESSOR INTERESTS.** The terms of this Note shall be binding upon Borrower, and upon Borrower's heirs, personal representatives, successors and assigns, and shall inure to the benefit of Lender and its successors and assigns.

**NOTIFY US OF INACCURATE INFORMATION WE REPORT TO CONSUMER REPORTING AGENCIES.** Please notify us if we report any inaccurate information about your account(s) to a consumer reporting agency. Your written notice describing the specific inaccuracy(ies) should be sent to us at the following address: Bank of McKenney Main Office 20718 First Street, P.O. Box 370 McKenney, VA 23872.

**GENERAL PROVISIONS.** This Note is payable on demand. The inclusion of specific default provisions or rights of Lender shall not preclude Lender's right to declare payment of this Note on its demand. If any part of this Note cannot be enforced, this fact will not affect the rest of the Note. Lender may delay or forgo enforcing any of its rights or remedies under this Note without losing them. Each Borrower understands and agrees that, with or without notice to Borrower, Lender may with respect to any other Borrower (a) make one or more additional secured or unsecured loans or otherwise extend additional credit; (b) alter, compromise, renew, extend, accelerate, or otherwise change one or more times the time for payment or other terms of any indebtedness, including increases and decreases of the rate of interest on the indebtedness; (c) exchange, enforce, waive, subordinate, fail or decide not to perfect, and release any security, with or without the substitution of new collateral; (d) apply such security and direct the order or manner of sale thereof, including without limitation, any non-judicial sale permitted by the terms of the controlling security agreements, as Lender in its discretion may determine; (e) release, substitute, agree not to sue, or deal with any one or more of Borrower's sureties, endorsers, or other guarantors on any terms or in any manner Lender may choose; and (f) determine how, when and what application of payments and credits shall be made on any other indebtedness owing by such other Borrower. Borrower and any other person who signs, guarantees or endorses this Note, to the extent allowed by law, waive presentment, demand for payment, and notice of dishonor. Upon any change in the terms of this Note, and unless otherwise expressly stated in writing, no party who signs this Note, whether as maker, guarantor, accommodation maker or endorser, shall be released from liability. All such parties agree that Lender may renew or extend (repeatedly and for any length of time) this loan or release any party or guarantor or collateral; or impair, fail to realize upon or perfect Lender's security interest in the collateral; and take any other action deemed necessary by Lender without the consent of or notice to anyone. All such parties also agree that Lender may modify this loan without the consent of or notice to anyone other than the party with whom the modification is made. If "Borrower" consists of more than one party, the word "Borrower" as used in this Note shall refer to any one or more of the parties comprising "Borrower," and each of such parties shall be jointly and severally liable pursuant to this Note.

# PROMISSORY NOTE
## (Continued)

PRIOR TO SIGNING THIS NOTE, EACH BORROWER READ AND UNDERSTOOD ALL THE PROVISIONS OF THIS NOTE. EACH BORROWER AGREES TO THE TERMS OF THE NOTE.

BORROWER ACKNOWLEDGES RECEIPT OF A COMPLETED COPY OF THIS PROMISSORY NOTE.

THIS NOTE IS GIVEN UNDER SEAL AND IT IS INTENDED THAT THIS NOTE IS AND SHALL CONSTITUTE AND HAVE THE EFFECT OF A SEALED INSTRUMENT ACCORDING TO LAW.

BORROWER:

X _____ (Seal)          X _____ (Seal)
   RAYMOND M. LEE                                        MELANIE W. LEE

LASER PRO Lending, Ver. 5.31.00.003 Copr. Harland Financial Solutions, Inc. 1997, 2006.  All Rights Reserved.  - VA  C:\CFI\LPL\D20.FC  TR-1823  PR-6USBALL

OC 002502

06000 2502                          0052

*Mail to: Ferris+Ferris'
P.O. Box 394
Chesterfield, VA 23832*

WHEN RECORDED MAIL TO:
BANK OF MCKENNEY
LOAN PROCESSING DEPT
P O BOX 370
McKENNEY, VA 23872

SEND TAX NOTICES TO:
RAYMOND M. LEE
MELANIE W. LEE
14319 RIVER ROAD
CHESTERFIELD, VA  23838

Tax Map Reference No(s):  001-0300                    FOR RECORDER'S USE ONLY

This Deed of Trust prepared by:  -, Bank of McKenney

### DEED OF TRUST

### THIS IS A CREDIT LINE DEED OF TRUST

#### Maximum aggregate amount of principal
#### to be secured hereby at any one time: $92,900.00

### Name and address of Noteholder secured hereby:

### Bank of McKenney
### Main Office
### 20718 First Street, P.O. Box 370
### McKenney, VA  23872

THIS DEED OF TRUST is dated July 11, 2006, among RAYMOND M. LEE and MELANIE W. LEE, whose address is 14319 RIVER ROAD, CHESTERFIELD, VA  23838 ("Grantor"); Bank of McKenney, whose address is Main Office, 20718 First Street, P.O. Box 370, McKenney, VA  23872 (referred to below sometimes as "Lender" and sometimes as "Beneficiary"); and WILLIAM D. ALLEN, III, a resident of Virginia, whose address is 13927 BOYDTON PLANK ROAD, DINWIDDIE, VA  23841 and RICHARD M. LILES, a resident of Virginia, whose address is 20718 FIRST STREET, MCKENNEY, VA  23872 ("Grantee," also referred to below as "Trustee"), either of whom may act.

CONVEYANCE AND GRANT.  For valuable consideration, Grantor conveys, transfers, encumbers and pledges and assigns to Trustee for the benefit of Lender as Beneficiary, all of Grantor's present and future right, title, and interest in and to the following described real property, together with all existing or subsequently erected or affixed buildings, improvements and fixtures; all easements, rights of way, and appurtenances; and all rights, royalties, and profits relating to the real property, including without limitation all minerals, oil, gas, geothermal and similar matters, (the "Real Property") located in CITY OF HOPEWELL  Commonwealth of Virginia:

   See SCHEDULE "A", which is attached to this Deed of Trust and made a part of this Deed of Trust as if fully set forth herein.

The Real Property or its address is commonly known as  415 BROWN AVENUE, HOPEWELL, VA 23860.  The Real Property Tax Map Reference No(s) is/are 001-0300.

CROSS-COLLATERALIZATION.  In addition to the Note, this Deed of Trust secures all obligations, debts and liabilities, plus interest thereon, of Grantor to Lender, or any one or more of them, as well as all claims by Lender against Grantor or any one or more of them, whether now existing or hereafter arising, whether related or unrelated to the purpose of the Note, whether voluntary or otherwise, whether due or not due, direct or indirect, determined or undetermined, absolute or contingent, liquidated or unliquidated, whether Grantor may be liable individually or jointly with others, whether

EXHIBIT
B

.953

# DEED OF TRUST
## (Continued)

obligated as guarantor, surety, accommodation party or otherwise, and whether recovery upon such amounts may be or hereafter may become barred by any statute of limitations, and whether the obligation to repay such amounts may be or hereafter may become otherwise unenforceable.

**FUTURE ADVANCES.** In addition to the amounts specified in the Note, this Deed of Trust also secures future advances.

Grantor presently, absolutely, and irrevocably assigns to Lender (also known as Beneficiary in this Deed of Trust) all of Grantor's right, title, and interest in and to all present and future leases of the Property and all Rents from the Property. In addition, Grantor grants to Lender a Uniform Commercial Code security interest in the Personal Property and Rents.

**THIS DEED OF TRUST, INCLUDING THE ASSIGNMENT OF RENTS AND THE SECURITY INTEREST IN THE RENTS AND PERSONAL PROPERTY, IS GIVEN TO SECURE (A) PAYMENT OF THE INDEBTEDNESS AND (B) PERFORMANCE OF ANY AND ALL OBLIGATIONS UNDER THIS DEED OF TRUST. THIS DEED OF TRUST IS GIVEN AND ACCEPTED ON THE FOLLOWING TERMS:**

**PAYMENT AND PERFORMANCE.** Except as otherwise provided in this Deed of Trust, Grantor shall pay to Lender all amounts secured by this Deed of Trust as they become due, and shall strictly and in a timely manner perform all of Grantor's obligations under the Note, this Deed of Trust, and the Related Documents.

**POSSESSION AND MAINTENANCE OF THE PROPERTY.** Grantor agrees that Grantor's possession and use of the Property shall be governed by the following provisions:

  **Possession and Use.** Until the occurrence of an Event of Default, Grantor may (1) remain in possession and control of the Property; (2) use, operate or manage the Property; and (3) acting as Lender's agent, collect the Rents from the Property.

  **Duty to Maintain.** Grantor shall maintain the Property in tenantable condition and promptly perform all repairs, replacements, and maintenance necessary to preserve its value.

  **Hazardous Substances.** Grantor represents and warrants that the Property never has been, and never will be so long as this Deed of Trust remains a lien on the Property, used for the generation, manufacture, storage, treatment, disposal, release or threatened release of any Hazardous Substance in violation of any Environmental Laws. Grantor authorizes Lender and its agents to enter upon the Property to make such inspections and tests as Lender may deem appropriate to determine compliance of the Property with this section of the Deed of Trust. Grantor hereby (1) releases and waives any future claims against Lender for indemnity or contribution in the event Grantor becomes liable for cleanup or other costs under any such laws, and (2) agrees to indemnify and hold harmless Lender against any and all claims and losses resulting from a breach of this paragraph of the Deed of Trust. This obligation to indemnify shall survive the payment of the Indebtedness and the satisfaction of this Deed of Trust.

**DUE ON SALE - CONSENT BY LENDER.** NOTICE - THE DEBT SECURED HEREBY IS SUBJECT TO CALL IN FULL OR THE TERMS THEREOF BEING MODIFIED IN THE EVENT OF SALE OR CONVEYANCE OF THE PROPERTY CONVEYED. Lender may, at Lender's option, declare immediately due and payable all sums secured by this Deed of Trust upon the sale or transfer, without Lender's prior written consent, of all or any part of the Real Property, or any interest in the Real Property. A "sale or transfer" means the conveyance of Real Property or any right, title or interest in the Real Property; whether legal, beneficial or equitable; whether voluntary or involuntary; whether by outright sale, deed, installment sale contract, land contract, contract for deed, leasehold interest with a term greater than three (3) years, lease-option contract, or by sale, assignment, or transfer of any beneficial interest in or to any land trust holding title to the Real Property, or by any other method of conveyance of an interest in the Real Property. However, this option shall not be exercised by Lender if such exercise is prohibited by federal law or by Virginia law.

**TAXES AND LIENS.** The following provisions relating to the taxes and liens on the Property are part of this Deed of Trust:

  **Payment.** Grantor shall pay when due (and in all events prior to delinquency) all taxes, special taxes, assessments, charges (including water and sewer), fines and impositions levied against or on account of the Property, and shall pay when due all claims for work done on or for services rendered or material furnished to the Property. Grantor shall maintain the Property free of all liens having priority over or equal to the interest of Lender under this Deed of Trust, except for the lien of taxes and assessments not due and except as otherwise provided in this Deed of Trust.

**PROPERTY DAMAGE INSURANCE.** The following provisions relating to insuring the Property are a part of this Deed of Trust.

  **Maintenance of Insurance.** Grantor shall procure and maintain policies of fire insurance with

0034

**DEED OF TRUST**
(Continued)

standard extended coverage endorsements on a replacement basis for the full insurable value covering all improvements on the Real Property in an amount sufficient to avoid application of any coinsurance clause, and with a standard mortgagee clause in favor of Lender. Grantor shall also procure and maintain comprehensive general liability insurance in such coverage amounts as Lender may request with Trustee and Lender being named as additional insureds in such liability insurance policies. Additionally, Grantor shall maintain such other insurance, including but not limited to hazard, business interruption, and boiler insurance, as Lender may require. Policies shall be written in form, amounts, coverages and basis acceptable to Lender and issued by a company or companies acceptable to Lender. Grantor, upon request of Lender, will deliver to Lender from time to time the policies or certificates of insurance in form satisfactory to Lender, including stipulations that coverages will not be cancelled or diminished without at least ten (10) days prior written notice to Lender. Each insurance policy also shall include an endorsement providing that coverage in favor of Lender will not be impaired in any way by any act, omission or default of Grantor or any other person. Should the Real Property be located in an area designated by the Director of the Federal Emergency Management Agency as a special flood hazard area, Grantor agrees to obtain and maintain Federal Flood Insurance, if available, for the full unpaid principal balance of the loan and any prior liens on the property securing the loan, up to the maximum policy limits set under the National Flood Insurance Program, or as otherwise required by Lender, and to maintain such insurance for the term of the loan.

**LENDER'S EXPENDITURES.** If any action or proceeding is commenced that would materially affect Lender's interest in the Property or if Grantor fails to comply with any provision of this Deed of Trust or any Related Documents, including but not limited to Grantor's failure to discharge or pay when due any amounts Grantor is required to discharge or pay under this Deed of Trust or any Related Documents, Lender on Grantor's behalf may (but shall not be obligated to) take any action that Lender deems appropriate on the Property and paying all costs for insuring, maintaining and preserving the Property. All such expenditures incurred or paid by Lender for such purposes will then bear interest at the rate charged under the Note from the date incurred or paid by Lender to the date of repayment by Grantor. All such expenses will become a part of the Indebtedness and, at Lender's option, will (A) be payable on demand; (B) be added to the balance of the Note and be apportioned among and be payable with any installment payments to become due during either (1) the term of any applicable insurance policy; or (2) the remaining term of the Note; or (C) be treated as a balloon payment which will be due and payable at the Note's maturity.

**WARRANTY; DEFENSE OF TITLE.** The following provisions relating to ownership of the Property are a part of this Deed of Trust:

**Title.** Grantor warrants generally that: (a) Grantor holds good and marketable title to the Property in fee simple, free and clear of all liens and encumbrances other than those set forth in the Real Property description or in any title insurance policy, title report, or final title opinion issued in favor of, and accepted by, Lender in connection with this Deed of Trust, and (b) Grantor has the full right, power, and authority to execute and deliver this Deed of Trust to Lender.

**Defense of Title.** Subject to the exception in the paragraph above, Grantor warrants and will forever defend the title to the Property against the lawful claims of all persons.

**EVENTS OF DEFAULT.** Each of the following, at Lender's option, shall constitute an Event of Default under this Deed of Trust:

**Payment Default.** Grantor fails to make any payment when due under the Indebtedness.

**Other Default.** Grantor fails to comply with any other term, obligation, covenant or condition contained in this Deed of Trust or in any of the Related Documents.

**Compliance Default.** Failure to comply with any other term, obligation, covenant or condition contained in this Deed of Trust, the Note or in any of the Related Documents.

**Default on Other Payments.** Failure of Grantor within the time required by this Deed of Trust to make any payment for taxes or insurance, or any other payment necessary to prevent filing of or to effect discharge of any lien.

**Death or Insolvency.** The death of any Grantor, the insolvency of Grantor, the appointment of a receiver for any part of Grantor's property, any assignment for the benefit of creditors, any type of creditor workout, or the commencement of any proceeding under any bankruptcy or insolvency laws by or against Grantor.

**Events Affecting Guarantor.** Any of the preceding events occurs with respect to any guarantor, endorser, surety, or accommodation party of any of the Indebtedness or any guarantor, endorser, surety, or accommodation party dies or becomes incompetent, or revokes or disputes the validity of, or liability under, any Guaranty of the Indebtedness. In the event of a death, Lender, at its

:55

# DEED OF TRUST
## (Continued)

option, may, but shall not be required to, permit the guarantor's estate to assume unconditionally the obligations arising under the guaranty in a manner satisfactory to Lender, and, in doing so, cure any Event of Default.

**Adverse Change.** A material adverse change occurs in Grantor's financial condition, or Lender believes the prospect of payment or performance of the Indebtedness is impaired.

**Insecurity.** Lender in good faith believes itself insecure.

**Right to Cure.** If any default, other than a default in payment is curable and if Grantor has not been given a notice of a breach of the same provision of this Deed of Trust within the preceding twelve (12) months, it may be cured if Grantor, after receiving written notice from Lender demanding cure of such default: (1) cures the default within fifteen (15) days; or (2) if the cure requires more than fifteen (15) days, immediately initiates steps which Lender deems in Lender's sole discretion to be sufficient to cure the default and thereafter continues and completes all reasonable and necessary steps sufficient to produce compliance as soon as reasonably practical.

**RIGHTS AND REMEDIES ON DEFAULT.** Upon the occurrence of any Event of Default under any indebtedness, or should Grantor fail to comply with any of Grantor's obligations under this Deed of Trust, Trustee or Lender may exercise any one or more of the following rights and remedies:

**Election of Remedies.** Election by Lender to pursue any remedy shall not exclude pursuit of any other remedy, and an election to make expenditures or to take action to perform an obligation of Grantor under this Deed of Trust, after Grantor's failure to perform, shall not affect Lender's right to declare a default and exercise its remedies.

**Accelerate Indebtedness.** Lender shall have the right at its option without notice to Grantor to declare the entire Indebtedness immediately due and payable, including any prepayment penalty which Grantor would be required to pay. This right is in addition to all other rights given to holders of promissory notes under Title 55 of the Code of Virginia.

**Foreclosure.** With respect to all or any part of the Real Property, the Trustee shall have the right to foreclose by notice and sale, and Lender shall have the right to foreclose by judicial foreclosure, in either case in accordance with and to the full extent provided by applicable law. Grantor expressly waives and releases any requirement or obligation that Lender or Trustee present evidence or otherwise proceed before any court or other judicial or quasi-judicial body as a precondition to or otherwise incident to the exercise of the powers of sale authorized by this Deed of Trust. The proceeds of sale shall be applied by Trustee as follows: (a) first, to pay all proper advertising expenses, auctioneer's allowance, the expenses, if any, required to correct any irregularity in the title, premium for Trustee's bond, auditor's fee, attorneys' fees, and all other expenses of sale incurred in or about the protection and execution of this Deed of Trust, and all moneys advanced for taxes, assessments, insurance, and with interest thereon at the rate provided in the Note, and all taxes and assessments due upon the Property at time of sale, and to retain as compensation a reasonable Trustee's commission; (b) second, to pay the whole amount then remaining unpaid on the Indebtedness; (c) third, to pay liens of record against the Property according to their priority of lien and to the extent that funds remaining in Trustee's hands are available; and (d) last, to pay the remainder of the proceeds, if any, to Grantor, Grantor's heirs, personal representatives, successors or assigns upon the delivery and surrender to the purchaser of possession of the Property, less costs and expenses of obtaining possession.

**Other Remedies.** Trustee or Lender shall have any other right or remedy provided in this Deed of Trust or the Note or by law.

**Sale of the Property.** To the extent permitted by applicable law, Grantor hereby waives any and all rights to have the Property marshalled. In exercising its rights and remedies, the Trustee or Lender shall be free to sell all or any part of the Property together or separately, in one sale or by separate sales. Lender shall be entitled to bid at any public sale on all or any portion of the Property.

**Attorneys' Fees; Expenses.** If Lender institutes any suit or action to enforce any of the terms of this Deed of Trust, Lender shall be entitled to recover such sum as the court may adjudge reasonable as attorneys' fees at trial and upon any appeal. Whether or not any court action is involved, and to the extent not prohibited by law, all reasonable expenses Lender incurs that in Lender's opinion are necessary at any time for the protection of its interest or the enforcement of its rights shall become a part of the Indebtedness payable on demand and shall bear interest at the Note rate from the date of the expenditure until repaid. Expenses covered by this paragraph include, without limitation, however subject to any limits under applicable law, Lender's attorneys' fees and Lender's legal expenses, whether or not there is a lawsuit, including attorneys' fees and expenses for bankruptcy proceedings (including efforts to modify or vacate any automatic stay or injunction), appeals, and any anticipated post-judgment collection services, the cost of searching records, obtaining title reports (including foreclosure reports), surveyors' reports, and appraisal

156

## DEED OF TRUST
### (Continued)

fees, title insurance, a reasonable Trustee's commission and reasonable attorney fees incurred by the Trustee in performing its duties under the Deed of Trust, to the extent permitted by applicable law. Grantor also will pay any court costs, in addition to all other sums provided by law.

**Powers of Trustee.** In addition to all powers of Trustee arising as a matter of law, Trustee (and each of them if more than one) shall have the power to take the following actions with respect to the Property upon the written request of Lender and Grantor: (a) join in preparing and filing a map or plat of the Real Property, including the dedication of streets or other rights to the public; (b) join in granting any easement or creating any restriction on the Real Property; and (c) join in any subordination or other agreement affecting this Deed of Trust or the interest of Lender under this Deed of Trust.

**Successor Trustee.** Lender, at Lender's option, at any time hereafter and without prior notice and without specifying any reason, may from time to time appoint a successor Trustee to any Trustee appointed under this Deed of Trust by an instrument executed and acknowledged by Lender and recorded in the office in the jurisdiction where this Deed of Trust has been recorded. The instrument shall contain, in addition to all other matters required by state law, the names of the original Lender, Trustee, and Grantor, the book and page where this Deed of Trust is recorded, and the name of the successor trustee and the county, city or town in which he or she resides, and the instrument shall be executed and acknowledged by Lender or its successors in interest. The successor trustee, without conveyance of the Property, shall succeed to all the title, power, and duties conferred upon the Trustee in this Deed of Trust and by applicable law. This procedure for substitution of Trustee shall govern to the exclusion of all other provisions for substitution.

**MISCELLANEOUS PROVISIONS.** The following miscellaneous provisions are a part of this Deed of Trust:

**Governing Law.** This Deed of Trust will be governed by federal law applicable to Lender and, to the extent not preempted by federal law, the laws of the Commonwealth of Virginia without regard to its conflicts of law provisions. This Deed of Trust has been accepted by Lender in the Commonwealth of Virginia.

**Choice of Venue.** If there is a lawsuit, Grantor agrees upon Lender's request to submit to the jurisdiction of the applicable courts for DINWIDDIE COUNTY County, Commonwealth of Virginia.

**Time is of the Essence.** Time is of the essence in the performance of this Deed of Trust.

**Homestead Waiver.** Grantor waives the benefit of Grantor's homestead exemption as to the Property described in this Deed of Trust.

**DEFINITIONS.** The following capitalized words and terms shall have the following meanings when used in this Deed of Trust. Unless specifically stated to the contrary, all references to dollar amounts shall mean amounts in lawful money of the United States of America. Words and terms used in the singular shall include the plural, and the plural shall include the singular, as the context may require. Words and terms not otherwise defined in this Deed of Trust shall have the meanings attributed to such terms in the Uniform Commercial Code:

**Beneficiary.** The word "Beneficiary" means Bank of McKenney, and its successors and assigns.

**Borrower.** The word "Borrower" means RAYMOND M. LEE and MELANIE W. LEE and includes all co-signers and co-makers signing the Note and all their successors and assigns.

**Deed of Trust.** The words "Deed of Trust" mean this Deed of Trust among Grantor, Lender, and Trustee

**Environmental Laws.** The words "Environmental Laws" mean any and all state, federal and local statutes, regulations and ordinances relating to the protection of human health or the environment, including without limitation the Comprehensive Environmental Response, Compensation, and Liability Act of 1980, as amended, 42 U.S.C. Section 9601, et seq. ("CERCLA"), the Superfund Amendments and Reauthorization Act of 1986, Pub. L. No. 99-499 ("SARA"), the Hazardous Materials Transportation Act, 49 U.S.C. Section 1801, et seq., the Resource Conservation and Recovery Act, 42 U.S.C. Section 6901, et seq., or other applicable state or federal laws, rules, or regulations adopted pursuant thereto.

**Event of Default.** The words "Event of Default" mean any of the events of default set forth in this Deed of Trust in the events of default section of this Deed of Trust.

**Grantor.** The word "Grantor" means RAYMOND M. LEE and MELANIE W. LEE.

**Guaranty.** The word "Guaranty" means the guaranty from guarantor, endorser, surety, or accommodation party to Lender, including without limitation a guaranty of all or part of the Note.

**Improvements.** The word "Improvements" means all existing and future improvements, buildings,

)057

## DEED OF TRUST
### (Continued)

structures, mobile homes affixed on the Real Property, facilities, additions, replacements and other construction on the Real Property.

**Indebtedness.** The word "Indebtedness" means all principal, interest, and other amounts, costs and expenses payable under the Note or Related Documents, together with all renewals of, extensions of, modifications of, consolidations of and substitutions for the Note or Related Documents and any amounts expended or advanced by Lender to discharge Grantor's obligations or expenses incurred by Trustee or Lender to enforce Grantor's obligations under this Deed of Trust, together with interest on such amounts as provided in this Deed of Trust.  Specifically, without limitation, Indebtedness includes all amounts that may be indirectly secured by the Cross-Collateralization provision of this Deed of Trust.

**Lender.**  The word "Lender" means Bank of McKenney, its successors and assigns.

**Note.**  The word "Note" means the promissory note dated July 11, 2006, in the original principal amount of $92,900.00 from Grantor to Lender, together with all modifications of and renewals, replacements, and substitutions for the promissory note or agreement.

**Personal Property.**  The words "Personal Property" mean all equipment, fixtures, and other articles of personal property now or hereafter owned by Grantor, and now or hereafter attached or affixed to the Real Property; together with all accessions, parts, and additions to, all replacements of, and all substitutions for, any of such property; and together with all proceeds (including without limitation all insurance proceeds and refunds of premiums) from any sale or other disposition of the Property.

**Property.**  The word "Property" means collectively the Real Property and the Personal Property.

**Real Property.**  The words "Real Property" mean the real property, interests and rights, as further described in this Deed of Trust.

**Related Documents.**  The words "Related Documents" mean all promissory notes, credit agreements, loan agreements, environmental agreements, guaranties, security agreements, mortgages, deeds of trust, security deeds, collateral mortgages, and all other instruments, agreements and documents, whether now or hereafter existing, executed in connection with the Indebtedness.

**Rents.**  The word "Rents" means all present and future rents, revenues, income, issues, royalties, profits, and other benefits derived from the Property.

**Trustee.**  The word "Trustee" means WILLIAM D. ALLEN, III, whose address is 13927 BOYDTON PLANK ROAD, DINWIDDIE, VA  23841 and RICHARD M.  LILES, whose address is 20718 FIRST STREET, MCKENNEY, VA  23872 and any substitute or successor trustees.  if more than one person is named as trustee, the word "Trustee" means each such person.

EACH GRANTOR ACKNOWLEDGES HAVING READ ALL THE PROVISIONS OF THIS DEED OF TRUST, AND EACH GRANTOR AGREES TO ITS TERMS.

THIS DEED OF TRUST IS GIVEN UNDER SEAL AND IT IS INTENDED THAT THIS DEED OF TRUST IS AND SHALL CONSTITUTE AND HAVE THE EFFECT OF A SEALED INSTRUMENT ACCORDING TO LAW.

GRANTOR:

X _____ (Seal)
RAYMOND M. LEE

X _____ (Seal)
MELANIE W. LEE

0058

**DEED OF TRUST**
(Continued)

## INDIVIDUAL ACKNOWLEDGMENT

STATE OF __Virginia__                            }
                                                  } SS
COUNTY OF __Chesterfield__                       }

On this day before me, the undersigned Notary Public, personally appeared **RAYMOND M. LEE** and **MELANIE W. LEE**, to me known to be the individuals described in and who executed the Deed of Trust, and acknowledged that they signed the Deed of Trust as their free and voluntary act and deed, for the uses and purposes therein mentioned.

Given under my hand and official seal this ___11th___ day of ___July___, 20_06_.

By _____         Residing at __Chesterfield County__
         Loretta R. Sikes
Notary Public in and for _Chesterfield County_    My commission expires __12/31/09__

LASER PRO Lending, Ver. 5.31.00.003 Copr. Harland Financial Solutions, Inc. 1997, 2006. All Rights Reserved. VA C:\CFI\PL\G01\TC SR 1633 PR-BUSMLL

0059

"SCHEDULE A"

ALL THAT CERTAIN LOT, PIECE OR PARCEL OF LAND, WITH
IMPROVEMENTS THEREON AND APPURTENANCES THEREUNTO BELONGING,
LYING AND BEING IN THE CITY OF HOPEWELL, VIRGINIA, AND
BEING KNOWN, NUMBERED AND DESIGNATED AS LOT 33, BROWN
AVENUE, "A" VILLAGE, A SUBDIVISION OF SAID CITY AS SHOWN ON
A PLAT OR PLAN THEREOF DULY OR RECORD IN THE CLERK'S
OFFICE, CIRCUIT COURT OF CITY OF HOPEWELL, VIRGINIA, IN
PLAT BOOK 1, PAGE 83, REFRENCE TO WHICH PLAT IS HERBBY MADE
FOR A MORE PARTICULAR DESCRIPTION OF THE SAID PROPERTY
BEING CONVEYED HEREIN. SAID PROPERTY IS KNOWN AS 415 BROWN
AVENUE.

BEING THE SAME REAL ESTATE CONVEYED TO RAYMOND M. LEE AND
MELANIE W. LEE, HUSBAND AND WIFE, AS TENANTS BY THE
ENTIRETY WITH THE RIGHT OF SURVIVORSHIP AS AT COMMON LAW,
BY DEED FROM RAYMOND M. LEE, RECORDED IN THE CLERK'S
OFFICE, CIRCUIT COURT OF CITY OF HOPEWELL, VIRGINIA,
IMMEDIATELY PRECEDING AND SUMULTANEOUSLY HEREWITH.

_____      _____
RAYMOND M. LEE         MELANIE W. LEE

# PROMISSORY NOTE

| Principal | Loan Date | Maturity | Loan No | Call / Coll | Account | Officer | Initials |
|-----------|-----------|----------|---------|-------------|---------|---------|----------|
| $112,600.00 | 04-12-2006 | 04-12-2016 | 17335305 | CA-1-4 1ST / 20 | | SBK | |

References in the shaded area are for Lender's use only and do not limit the applicability of this document to any particular loan or item.
Any item above containing "****" has been omitted due to text length limitations.

**Borrower:** RAYMOND M. LEE (SSN: 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)
MELANIE W. LEE (SSN: 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)
14319 RIVER ROAD
CHESTERFIELD, VA 23838

**Lender:** Bank of McKenney
Main Office
20718 First Street, P.O. Box 370
McKenney, VA 23872

*)PY*

### IMPORTANT NOTICE

THIS INSTRUMENT CONTAINS A CONFESSION OF JUDGMENT PROVISION WHICH CONSTITUTES A WAIVER OF IMPORTANT RIGHTS YOU MAY HAVE AS A DEBTOR AND ALLOWS THE CREDITOR TO OBTAIN A JUDGMENT AGAINST YOU WITHOUT ANY FURTHER NOTICE.

**Principal Amount: $112,600.00**       **Interest Rate: 7.750%**       **Date of Note: April 12, 2006**

**PROMISE TO PAY.** RAYMOND M. LEE and MELANIE W. LEE ("Borrower") jointly and severally promise to pay to Bank of McKenney ("Lender"), or order, in lawful money of the United States of America, the principal amount of One Hundred Twelve Thousand Six Hundred & 00/100 Dollars ($112,600.00), together with interest at the rate of 7.750% per annum on the unpaid principal balance from April 12, 2006, until paid in full. The interest rate may change under the terms and conditions of the "INTEREST AFTER DEFAULT" section.

**PAYMENT.** Borrower will pay this loan in full immediately upon Lender's demand. If no demand is made, Borrower will pay this loan in 119 regular payments of $858.96 each and one irregular last payment estimated at $91,488.39. Borrower's first payment is due May 12, 2006, and all subsequent payments are due on the same day of each month after that. Borrower's final payment will be due on April 12, 2016, and will be for all principal, accrued interest, and all other applicable fees, costs and charges, if any, not yet paid. Payments include principal and interest. Unless otherwise agreed or required by applicable law, payments will be applied first to any accrued unpaid interest; then to principal; then to any unpaid collection costs; and then to any late charges. The annual interest rate for this Note is computed on a 365/360 basis; that is, by applying the ratio of the annual interest rate over a year of 360 days, multiplied by the outstanding principal balance, multiplied by the actual number of days the principal balance is outstanding. Borrower will pay Lender at Lender's address shown above or at such other place as Lender may designate in writing.

**PREPAYMENT; MINIMUM INTEREST CHARGE.** Borrower agrees that all loan fees and other prepaid finance charges are earned fully as of the date of the loan and will not be subject to refund upon early payment (whether voluntary or as a result of default), except as otherwise required by law. In any event, even upon full prepayment of this Note, Borrower understands that Lender is entitled to a minimum interest charge of $25.00. Other than Borrower's obligation to pay any minimum interest charge, Borrower may pay without penalty all or a portion of the amount owed earlier than it is due. Early payments will not, unless agreed to by Lender in writing, relieve Borrower of Borrower's obligation to continue to make payments under the payment schedule. Rather, early payments will reduce the principal balance due and may result in Borrower's making fewer payments. Borrower agrees not to send Lender payments marked "paid in full", "without recourse", or similar language. If Borrower sends such a payment, Lender may accept it without losing any of Lender's rights under this Note, and Borrower will remain obligated to pay any further amount owed to Lender. All written communications concerning disputed amounts, including any check or other payment instrument that indicates that the payment constitutes "payment in full" of the amount owed or that is tendered with other conditions or limitations or as full satisfaction of a disputed amount must be mailed or delivered to: Bank of McKenney, Main Office, 20718 First Street, P.O. Box 370, McKenney, VA 23872.

**LATE CHARGE.** If a payment is 7 days or more late, Borrower will be charged 5.000% of the unpaid portion of the regularly scheduled payment.

**INTEREST AFTER DEFAULT.** Upon default, including failure to pay upon final maturity, the interest rate on this Note shall be increased to 15.000% per annum. However, in no event will the interest rate exceed the maximum interest rate limitations under applicable law.

**DEFAULT.** Each of the following shall constitute an event of default ("Event of Default") under this Note:

**Payment Default.** Borrower fails to make any payment when due under this Note.

**Other Defaults.** Borrower fails to comply with or to perform any other term, obligation, covenant or condition contained in this Note or in any of the related documents or to comply with or to perform any term, obligation, covenant or condition contained in any other agreement between Lender and Borrower.

**False Statements.** Any warranty, representation or statement made or furnished to Lender by Borrower or on Borrower's behalf under this Note or the related documents is false or misleading in any material respect, either now or at the time made or furnished or becomes false or misleading at any time thereafter.

**Death or Insolvency.** The death of Borrower or the dissolution or termination of Borrower's existence as a going business, or a trustee or receiver is appointed for Borrower or for all or a substantial portion of the assets of Borrower, or Borrower makes a general assignment for the benefit of Borrower's creditors, or Borrower files for bankruptcy, or an involuntary bankruptcy petition is filed against Borrower and such involuntary petition remains undismissed for sixty (60) days.

**Creditor or Forfeiture Proceedings.** Commencement of foreclosure or forfeiture proceedings, whether by judicial proceeding, self-help, repossession or any other method, by any creditor of Borrower or by any governmental agency against any collateral securing the loan. This includes a garnishment of any of Borrower's accounts, including deposit accounts, with Lender. However, this Event of Default shall not apply if there is a good faith dispute by Borrower as to the validity or reasonableness of the claim which is the basis of the creditor or forfeiture proceeding and if Borrower gives Lender written notice of the creditor or forfeiture proceeding and deposits with Lender monies or a surety bond for the creditor or forfeiture proceeding, in an amount determined by Lender, in its sole discretion, as being an adequate reserve or bond for the dispute.

**Events Affecting Guarantor.** Any of the preceding events occurs with respect to any guarantor, endorser, surety, or accommodation party of any of the indebtedness or any guarantor, endorser, surety, or accommodation party dies or becomes incompetent, or revokes or disputes the validity of, or liability under, any guaranty of the indebtedness evidenced by this Note. In the event of a death, Lender, at its option, may, but shall not be required to, permit the guarantor's estate to assume unconditionally the obligations arising under the guaranty in a manner satisfactory to Lender, and, in doing so, cure any Event of Default.

**Adverse Change.** A material adverse change occurs in Borrower's financial condition, or Lender believes the prospect of payment or performance of this Note is impaired.

EXHIBIT
tabbies
C

Insecurity. Lender in good faith believes itself insecure.

Cure Provisions. If any default, other than a default in payment is curable and if Borrower has not been given a notice of a breach of the same provision of this Note within the preceding twelve (12) months, it may be cured if Borrower, after receiving written notice from Lender demanding cure of such default: (1) cures the default within fifteen (15) days; or (2) if the cure requires more than fifteen (15) days, immediately initiates steps which Lender deems in Lender's sole discretion to be sufficient to cure the default and thereafter continues and completes all reasonable and necessary steps sufficient to produce compliance as soon as reasonably practical.

**LENDER'S RIGHTS.** Upon default, Lender may declare the entire unpaid principal balance under this Note and all accrued unpaid interest, together with all other applicable fees, costs and charges, if any, immediately due and payable, and then Borrower will pay that amount.

**ATTORNEYS' FEES; EXPENSES.** Subject to any limits under applicable law, upon default, Borrower agrees to pay Lender's attorneys' fees and all of Lender's other collection expenses, whether or not there is a lawsuit, including without limitation legal expenses for bankruptcy proceedings.

**HOMESTEAD WAIVER.** Borrower, to the extent permitted by law, hereby waives Borrower's homestead exemption with respect to all property subject to any security interest or lien granted to secure this loan.

**GOVERNING LAW.** This Note will be governed by federal law applicable to Lender and, to the extent not preempted by federal law, the laws of the Commonwealth of Virginia without regard to its conflicts of law provisions. This Note has been accepted by Lender in the Commonwealth of Virginia.

**CHOICE OF VENUE.** If there is a lawsuit, Borrower agrees upon Lender's request to submit to the jurisdiction of the applicable courts for DINWIDDIE COUNTY County, Commonwealth of Virginia.

**CONFESSION OF JUDGMENT.** Upon a default in payment of this Note at maturity, whether by acceleration or otherwise, Borrower hereby irrevocably authorizes and empowers WILLIAM D. ALLEN, III as Borrower's attorney-in-fact to appear in the DINWIDDIE COUNTY clerk's office and to confess judgment against Borrower for the unpaid amount of this Note as evidenced by an affidavit signed by an officer of Lender setting forth the amount then due, attorneys' fees plus costs of suit, and to release all errors, and waive all rights of appeal. If a copy of this Note, verified by an affidavit, shall have been filed in the proceeding, it will not be necessary to file the original as a warrant of attorney. Borrower waives the right to any stay of execution and the benefit of all exemption laws now or hereafter in effect. No single exercise of the foregoing warrant and power to confess judgment will be deemed to exhaust the power, whether or not any such exercise shall be held by any court to be invalid, voidable, or void; but the power will continue undiminished and may be exercised from time to time as Lender may elect until all amounts owing on this Note have been paid in full.

**DISHONORED ITEM FEE.** Borrower will pay a fee to Lender of $25.00 if Borrower makes a payment on Borrower's loan and the check or preauthorized charge with which Borrower pays is later dishonored.

**RIGHT OF SETOFF.** To the extent permitted by applicable law, Lender reserves a right of setoff in all Borrower's accounts with Lender (whether checking, savings, or some other account). This includes all accounts Borrower holds jointly with someone else and all accounts Borrower may open in the future. However, this does not include any IRA or Keogh accounts, or any trust accounts for which setoff would be prohibited by law. Borrower authorizes Lender, to the extent permitted by applicable law, to charge or setoff all sums owing on the indebtedness against any and all such accounts.

**COLLATERAL.** Borrower acknowledges this Note is secured by A CREDIT LINE DEED OF TRUST DATED APRIL 12, 2006.

**SUCCESSOR INTERESTS.** The terms of this Note shall be binding upon Borrower, and upon Borrower's heirs, personal representatives, successors and assigns, and shall inure to the benefit of Lender and its successors and assigns.

**NOTIFY US OF INACCURATE INFORMATION WE REPORT TO CONSUMER REPORTING AGENCIES.** Please notify us if we report any inaccurate information about your account(s) to a consumer reporting agency. Your written notice describing the specific inaccuracy(ies) should be sent to us at the following address: Bank of McKenney Main Office 20718 First Street, P.O. Box 370 McKenney, VA 23872.

**GENERAL PROVISIONS.** This Note is payable on demand. The inclusion of specific default provisions or rights of Lender shall not preclude Lender's right to declare payment of this Note on its demand. If any part of this Note cannot be enforced, this fact will not affect the rest of the Note. Lender may delay or forgo enforcing any of its rights or remedies under this Note without losing them. Each Borrower understands and agrees that, with or without notice to Borrower, Lender may with respect to any other Borrower (a) make one or more additional secured or unsecured loans or otherwise extend additional credit; (b) alter, compromise, renew, extend, accelerate, or otherwise change one or more times the time for payment or other terms of any indebtedness, including increases and decreases of the rate of interest on the indebtedness; (c) exchange, enforce, waive, subordinate, fail or decide not to perfect, and release any security, with or without the substitution of new collateral; (d) apply such security and direct the order or manner of sale thereof, including without limitation, any non-judicial sale permitted by the terms of the controlling security agreements, as Lender in its discretion may determine; (e) release, substitute, agree not to sue, or deal with any one or more of Borrower's sureties, endorsers, or other guarantors on any terms or in any manner Lender may choose; and (f) determine how, when and what application of payments and credits shall be made on any other indebtedness owing by such other Borrower. Borrower and any other person who signs, guarantees or endorses this Note, to the extent allowed by law, waive presentment, demand for payment, and notice of dishonor. Upon any change in the terms of this Note, and unless otherwise expressly stated in writing, no party who signs this Note, whether as maker, guarantor, accommodation maker or endorser, shall be released from liability. All such parties agree that Lender may renew or extend (repeatedly and for any length of time) this loan or release any party or guarantor or collateral; or impair, fail to realize upon or perfect Lender's security interest in the collateral; and take any other action deemed necessary by Lender without the consent of or notice to anyone. All such parties also agree that Lender may modify this loan without the consent of or notice to anyone other than the party with whom the modification is made. If "Borrower" consists of more than one party, the word "Borrower" as used in this Note shall refer to any one or more of the parties comprising "Borrower," and each of such parties shall be jointly and severally liable pursuant to this Note.

PRIOR TO SIGNING THIS NOTE, EACH BORROWER READ AND UNDERSTOOD ALL THE PROVISIONS OF THIS NOTE. EACH BORROWER AGREES TO THE TERMS OF THE NOTE.

BORROWER ACKNOWLEDGES RECEIPT OF A COMPLETED COPY OF THIS PROMISSORY NOTE.

THIS NOTE IS GIVEN UNDER SEAL AND IT IS INTENDED THAT THIS NOTE IS AND SHALL CONSTITUTE AND HAVE THE EFFECT OF A SEALED INSTRUMENT ACCORDING TO LAW.

BORROWER:

X _Raymond M. Lee_ (Seal)    X _Melanie W. Lee_ (Seal)
RAYMOND M. LEE                                MELANIE W. LEE

LASER PRO Lending, Ver. 5.31.00.003 Copr. Harland Financial Solutions, Inc. 1997, 2006. All Rights Reserved. - VA C:\CFI\LPL\D20.FC TR-1521 PR-RUSSALL